Good morning. May it please the Court, my name is John Derrick and I appear for Appellant Tzu Chin Chen. Thomas and Betts has described the Rule 52C issue, one of the two issues I'll be addressing, as highly technical in nature, or at least the way in which I've presented it. And in a way, it is highly technical, depending on how far one gets determined in a rather non-technical way by resort to a dictionary. Now, some words have been stopped. I mean, that's really an argument for him to make, because you're basically saying that the Rule says what it says, right? Yeah. I'm making a textualist argument, but even if one's not an avid textualist, but if the Court takes the view that the language is plain, I won't labor that point. And you're also presumably going to be arguing that it can't be a motion for judgment on the court, that evidence outside of the pleadings and so forth, therefore it can't be justified. Exactly. It certainly couldn't be that. Why can't it be considered to be a partial, a summary judgment under Portsmouth? Three reasons, Your Honor. The first is that it doesn't meet the requirements in Portsmouth Square. The second is that it doesn't meet the requirements in Garrow. The third has to do with the merits, and I'll speak to each of those if I may. On Portsmouth Square, this Court has recognized that at a pretrial conference, the district court can sua sponte grant summary judgment. However, it states what has to be the protocols that have to be gone through in order to do it. And if you look at the facts of Portsmouth Square, the Court stressed how the district court repeatedly questioned the party against whom the determination was going to be made. It said, are you sure? Can you give me anything? Could I ask a question? Was your client pro se, then? Yes, Your Honor. Indeed, he was. And there was no opportunity to speak. No oral argument was invited rather than the court. Yes. He was allowed to submit a written response, and there was actually a hearing on the matter. There was a hearing on the matter, Your Honor, and that – well, it was a pretrial conference. There were a bevy of motions, and this was kind of one, I believe, of about seven motions. And right at the end – Let me ask you, what was your client – what did your client want to raise or bring up that he couldn't bring up at that point in time? Well, of course, this is the problem that he's got, that he never got to put on his case. Well, no, he did get to put on his case because a couple days after the pretrial conference, there was the trial itself, and he was allowed to present evidence at that trial. Not on the unfair competition claim. That's what I'm asking. What did he want to present that he was unable to present in regards to his unfair competition claim? Well, of course, I'll answer the question as best I can, but if I can just preface my answer by saying that the problem is that because he couldn't put it on, a full record hasn't been made as to what it would have been. But to the extent that one can – But he should have known what he wanted. Well – He was asked. He was asked at what point? Not at trial. He wasn't. At trial, whenever he began to use the word unfair competition, up pops defense counsel and says, Your Honor, you know, we object, this has been thrown out, and he's cut short. But his unfair competition claim is in substantial part based on his breach of contract claim and based on his breach of the implied covenant of good faith and fair dealing. It's interwoven with that, but there may well have been allegations which were separate. Indeed, Thomas and Betz seemed to recognize that there were allegations that were separate. My question that we're asking you is, as a representative of Mr. Chen, what exactly did he want to argue that he wasn't able to argue at that point in time or any other point in time? The record indicates that there were some specific allegations to do with false accounting, in particular – and some kind of related SEC points. But on the false – False accounting would have been a breach of the contract anyway, so he litigated that at the trial, I presume. Well, not necessarily. I mean, I don't think that there was per se an obligation for Thomas and Betz to account accurately. There was one specific issue to do with the fact that Thomas and Betz recorded in its books sales to Chen for inventory that was shipped out to Singapore, which never was actually sold to Chen and which, presumably, was therefore sold to somebody else. And that presumably was a breach of the exclusivity provisions in the contract. But the – coming back, though, to Your Honor, to your earlier question about kind of how the court – district court had just granted summary judgment sui sponte, I mean, it didn't go through the Portsmouth Square hoops. That's one problem. The second problem, it has to do with Garrow. What hoop was that, actually? In other words, I thought Portsmouth requires advance notice and an opportunity to be heard, but aside from those hoops, what are the other hoops that weren't jumped through? Well, the – in Portsmouth Square, the court described the fact that the trial court repeatedly asked the party against whom the motion was going to be made, you know, do you have anything for me? This is what I'm going to do. In this case, the court just announced it as a fait accompli. It said at the hearing, I've written an order, go read the order. There was no meaningful opportunity to be heard. And that's – and that doesn't, therefore, meet the requirements of Portsmouth Square. But then you've also got Garrow. Garrow puts very specific requirements – and I hope I'm pronouncing Garrow correctly, Garrow v. Pulley. It sounds correct when you say it. It puts very specific requirements. None of us are French here. Indeed. It puts very specific requirements when a party is pro se. It says that essentially if a motion, in this case a Rule 12 motion, is being converted to a motion for summary judgment, which is what occurred in Garrow, and the party is unrepresented, notice, very clear notice, has to be given. Garrow says, we hold that where the non-moving party is appearing pro se, the notice requirements of Rule 56C must be strictly adhered to when a motion to dismiss under Rule 12B6 is converted into one for summary judgment. But here the rule – there was a motion under Rule 52C, and that notice said that you're going to have a hearing on this issue, and we're going to look at the merits of the point. And so there was clearly notice as to the fact that it was going to be a hearing, and the substance of the claim was going to be looked at. I think there are two points I'd make in answer to that question, Your Honor. The first is that the notice provision also goes to the amount of notice that's given. Under the local rule in the northern district, 35 days' notice has to be given for a motion for summary judgment. So that element of the Rule 56C notice was not present. And the second aspect is notice that the matter would actually become a pre-trial, and it is to be decided pre-trial. Because if one imagines what a litigant, in particular the type of pro se litigant with which Garrow is concerned might imagine, you open your mail and you see there is this Rule 52C motion. Garrow was a prisoner that was in custody, couldn't even go to the hearing. And so, therefore, the requirement of advance notice in that type of situation is more or less understandable. Here we do have a pro per, but the pro per was allowed to show up, a written response. Also, as far as Garrow is concerned, Garrow was distinguished to a large extent by Jacobson v. Filler, 790 Fed Second at 1362, 1364, wasn't it? Well, I'd have to go back to my notes to answer that last part of the question, but certainly the holding in Garrow was not limited to prisoner cases. It says we hold that where the nonmoving party is appearing pro se. That's what it says. It doesn't just say about prisoner cases. But the second part of my answer, Your Honor. That's what Jacobson says, is that Garrow is discussed in the context of prisoner case. Well, but the second point is what does the pro se litigant, what is that litigant meant to imagine when he opens the mail and there is this Rule 52C motion? Clearly, he's on notice that the other side is trying to get something done to dismiss this cause of action, but he may imagine that the motion won't be ruled on until during trial because that's what the rule says. We have no way of knowing what he thought or whether he was misled. At what point did you come into this case? I came into it on the appeal after the judgment was entered. I had no role in the district   Okay. And after any time for post-trial motions that expire other than the ---- I would have to check my calendar. As best as I can recall, it was relatively close to the time at which the notice of appeal was due. And I never became counsel of record in the district court. Okay. Because, you see, our problem is that here we are. We have a notice was sent that was given to him that there was going to be motion filed before trial. He saw that. He has a trial. At no time, and he has time after the trial to submit any new evidence or to ask for reconsideration or for a new trial, that none of that happened, so there's absolutely nothing in this record to indicate what he would have put in. And in those circumstances, I think our law is pretty clear that we can't just assume that a pro se litigant would have something to ---- evidence to put in. Well, I think ---- Aren't you asking us to make that assumption? I think in a way this does actually kind of veer in the direction of structural error that where a cause of action is taken away so that you never have an opportunity to state it, it is somewhat unfair then to blame the party who lost that cause of action for the fact that there isn't a record as to what it would have been. I mean, could Mr. Chen have done a better job making a record of this? Yes, I think he could have done. But during trial, he actually tried to do so. And I think what the record suggests is that he was mighty confused as to what was going on with regard to that cause of action. And he didn't quite know what had hit him because he didn't quite seem to realize at trial that this had been taken away. And maybe one of the reasons why he didn't is that he was relying on the plain text of Rule 52c. The answer, though, the cause of action that he was litigating at that point in time is 17-200, which is given to the court to decide. It's not given to a jury to decide. It is an equitable action. In other words, it depends upon the district court's view of the equities in the particular situation. It's also limited in terms of the relief that he can get. In other words, he can only get injunction, he can only get restitution. So in that type of situation, what was the error? What is the error at this point in time in regards to his 17-200 claim? In other words, if he could not successfully, after a trial, establish a basis that the other side had breached the Koch Act or was in a breach of the implied covenant of good faith and fair dealing, what is the – even if we were to agree with you that there was a technical error, what are we going to send the case back for at this point in time since Judge Cottie – Judge Cottie, I think. Yes, Judge Cottie already made factual findings in regards to those factual issues. Well, the – at the very least, we'll go back for a trial on the 17-200, and then Mr. Chin should have an opportunity to answer the question on your case. No, but the 17-200 questions would be the same as the breach of contract claim. Ostensibly, and the breach of implied covenant of good faith and fair dealing. Maybe the – maybe the contract claims would have been decided differently if the evidence relating to the 17-200 claims had come in. The two are intertwined. Counsel, you argue in your brief that you did have the accounting – you had the accounting – the false accounting problem – fraudulent accounting practices, false books, and SEC violations. I think those are the three things that you mentioned in your brief. Did any of that evidence come in at the trial on – under breach? No. I – well, I think there may have been some very brief references at times to – to that, but they were – when Mr. Chin tried to put them on – put them on, he was cut off. There were some – Because the district court thought they did not go to breach of contract? I'm sorry, Your Honor? Because the district court thought they did not go to breach of contract? Yes. Because he used the word unfair practices. Well, there was – there was at least one occasion when Mr. Chin began to refer to a report by T. Thomson Betts Auditors, I believe it was, and immediately the – the counsel for Thomson Betts said, you can't – objection, this is – this goes to the breach of – the unfair competition claim, and that's been struck. So – so – and there were a number of passages when Mr. Chin began to try to put on specific evidence and where that evidence was cut off. Indeed, Thomson Betts filed a motion in limine to exclude evidence after the Rule 52c motion had been granted, saying the following evidence can't come in because this is now – this is now off limits. I don't believe that the court specifically ruled on that motion, but certainly during the course of trial, there were at least three or four occasions when Mr. Chin began to try to talk about unfair competition, and he was told, you can't talk about this because it's been taken away. But let's assume that the evidence did come in. Let's assume that the judge believed that, in fact, it was false accounting, et cetera, et cetera. Why does that pertain to a 17200 claim? Well, I mean, for example, I mean, you know, if it goes to the issue of restitution, if it turns out that – that the false – The false accounting of what? Well, the false accounting of sales. I mean, if it turns out that Thomson Betts was holding this warehouse full of inventory, which its books showed had been sold to Thomas – to Mr. Chin, but, in fact, had not been sold to Mr. Chin, and was presumably, therefore, being sold to someone else at some point. Well, I mean, if you stop, either Chin had paid for it or he had not paid for it. He – well, Mr. Chin says he had not paid for this. Well, that's precisely the point. If Mr. Chin had not paid for it, he's not entitled to anything under 17200. Well, the connection is he had paid for other goods on the basis that he was the exclusive distributor, and so the restitution goes to that money. No, but he never established – he never offered any evidence of any unsold material that he had gotten from Thomson Betts. I can understand the argument if he had put in some evidence that there was apparently something that he had that was unsold, but he never established that. In fact, it's not disputed that after 1999, he never bought anything from Thomson Betts. Well, but I don't think it matters whether there was unsold material so long as he had given – so long as Thomson Betts had taken his money from him. No, but if he had – no, because there is – he's not arguing that the product that he bought was defective in any way. No, it's not. And if he paid for the goods, if he sold the goods, Thomson Betts hasn't obtained that money in some illegal fashion. Well, he certainly have. If he basically – if they – What he's arguing is – what he's arguing at that point in time is that he would have made either some more profit or something of that sort, but that's never been considered to be restitution. Well, if he was induced to hand over money to Thomson Betts and to invest in this business on the basis that he was going to be the exclusive distributor, and then we have this warehouse that – But he got product for the money that he turned over, and the product that he got, he sold. So therefore, where is the restitution in that particular situation? Well, Korean supply does regard restitutionary discordant as profit – of profit as allowable under 17-200. In certain situations, but not in this type of situation. Here, it's just – you're just arguing, you know, damages. But ultimately, the whole problem is we don't know what the situation is because he never put on his case. He should be able to make an argument now to say what – state what his case would be, rather than say, oh, send it back to me so I could somehow produce something else. What is the something else? I don't think that – I don't think that on appeal, it's for me to put on his case of trial. I'm limited by the record. It's just law for proof, isn't it? There has to be some showing that there was error, some kind of mistake made that here on the part of the trial. His trial brief – his trial brief – I'm sorry. Okay. Now, so what are we – what are we talking about in a nutshell? Well, his trial brief did itemize some of the false accounting evidence that he wished to put on. So to that extent, he did make a record, and that evidence didn't come in. I'm mindful of the time, and we haven't kind of addressed the underlying contract issue, which has been fully briefed, but is the other part of his case. Alitos. Why don't you touch on that briefly? I'm sorry? Why don't you touch on that briefly? Well, first of all, you know, as to the rescission element of that, the error with the rescission was that the contract did not require Mr. Chen to have registered before execution. It says before or afterwards. So the basis of the rescission, of granting the rescission counterclaim, was that he was not registered when he entered into the contract. Counsel, I understand – I understand that point, and let's assume that I thought that you were correct on that. What is the import of the rescission? Why is rescission important here, once the district court has already issued findings of the fact that there was no breach of the contract? Is this the belt to the no-breach suspenders? Well, I have to argue the rescission point, because otherwise, even if I could argue – I can't argue – I can't argue breach unless I can get through the rescission hurdle, because I have to show that there was a contract. And so unless I can convince the Court that rescission was wrong, I can't get on to the – to the breach part of my argument. So it's a stepping stone. And on breach, the fact is that Thomas and Betts admitted at trial that they didn't consider the contract valid prior to canceling it. And that's what their witness, Mr. Mayer, testified. But the fact is they had to have given these various forms of notice under the contract, because the contract contained – Sotomayor, wasn't there evidence here that he – that they understood that he – that he told them, apart from what the contract said, that he told them that he had – was already authorized to do business? I'm sorry, I didn't – Wasn't there evidence in the trial that he told them that he was authorized to do business? That he was authorized to do business. You know, there are a lot of technicalities there as to what authorized to do business might involve. But I believe that there was – I believe that was – that was part of it. But the question is, can that have been a material – can that have been material when Thomas and Betts then went and drafted a contract that says, well, you can do it afterwards if you haven't already done it? All right. And I'm mindful of the time, but if I might then have a brief rebuttal. Well, we'll give you a minute on rebuttal. I appreciate that. Thank you. I should hear from the other side. Thank you. Good morning, Your Honors. Richard A. Darabin for Thomas and Betts. Let me get to the last point that Judge Schroeder talked about. In the record, there was actually a statement by Mr. Chen saying that he was actually registered before the contract was entered into. It's quoted at page 37 of our brief. It's in the R.T. at 176. I don't think I need to read that. And why does the contract say that he is registered or will immediately register? Well, it's not perfectly written. I'll concede that point, Your Honor. Doesn't the contract also have a – what do you call it? A parole evidence-type clause? In other words, he can't rely on prior representations? It's got something like that, but I don't think that that eliminates the fraudulent inducement to enter the contract. But I think the court could also – Well, I don't think the court found fraudulent inducement. Yes, it does. Well – Do you have a finding of fraudulent inducement? There's no specific finding of fraudulent inducement, but I think that that – I think you can look at the record and find that that's there. Well – But the rescission is really kind of the least of our problems this morning, I think, because if you – I don't think we get to rescission because we get to Rule 52. And what? We didn't hear from Mr. – Let me stop you before you do, just real quick, quickly. Sure. I don't understand how there could be rescission in this particular situation since, one, your client had previously indicated that the contract had been terminated in 1999, so therefore, how can you rescind a contract that's been terminated? Also, your client never offered to refund the consideration, which is an element of statutory restitution in California, which is only statutory at this point in time, isn't it? Well, there was never an argument that we failed to refund anything by Mr. Chen, who, by the way, was represented by different lawyers throughout the case. And if you look at the docket sheets, it's only about a month before trial where he goes pro per, but then if you look at his trial brief, which is June 15th, when he's in pro per, that was written by a lawyer. There's just no doubt about it. So even if he didn't have a lawyer or record – I don't think we can presume that. It might be, you know, very – I guess – I think you can presume it, but I don't think it's necessary to get there. But – Let me just ask you a real quick question. As far as restitution is concerned, did your client ask for damages in any way, shape, form, in the restitution? Or is it just – did your client simply want the contract to be declared? On the rescission, you mean? Yes. You said restitution. I think you meant – Sorry. On the rescission. No. We just – the purpose of the rescission was, as Mr. Derrick says, to undo the contract and then you don't get the breach. Okay. So in other words, it's just – And so it's the belt and the handers is really what it is. Okay. But back to 52C, first of all, we have a waiver issue, because Mr. Chen never made any of these arguments in the district court. But wouldn't the Garrow case really apply in that context more than the other one? I don't think Garrow applies at all, because what Garrow was, number one – and I think you hit it when you were quizzing Mr. Derrick – number one, Garrow was a prisoner who didn't appear at the hearing. And more importantly, Garrow was limited to converting a pleading motion to an evidence motion. And this was always an evidence motion. It was brought as an evidence motion. The requests for admissions were attached. The deems admissions were attached. And Mr. Chen was a savvy guy. I mean, the judge says that several times on the record. If he had thought, one would think, that those admissions were not deemed or didn't prove what we said they proved, he would have said something in his response, which he filed, but he didn't. And so I think the first argument we have is that all these arguments about 52C are waived. If you get beyond the waiver, we've cited a number of circuit court cases and district court cases in our brief for the proposition that 52C applies in varying circumstances that you might say are at odds with the plain text of the statute. But for example – There's only one case that basically holds that. The Orsman case, exactly. No, no, no, no. There's only one case that holds that 52C can be applied outside of the trial context. And that situation is so limited and so different from this one, why would we ever want to apply it? Are you talking about common cause, Your Honor? I'm talking about the Seventh Circuit case. I'm sorry. I couldn't hear you. The Seventh Circuit case. Oh, that's – The name is stationed at this point. Oh, the Pinkston case. That was the one with the evidentiary hearing before magistrate judge. Yes. Yes. That is a slightly different situation. But the common cause case is one. It's not a circuit case, I grant you. Yes. It is a district court case where a 52C was applied in circumstances like this. Now, I think the – Let me ask you, why would we ever want to apply 52C outside of its clear text? Well, Your Honor, I think that when you take a look at 52C in combination with Rule 16 and Portman, what they teach is that we do give some discretion to a district court. No, let's do – let me stop you. I think there's a difference between applying 52C, applying judgment on the pleadings, and applying a Rule 56. They're separate. Why would we apply 52C itself in this type of situation? There doesn't seem to be any purpose. Well, the purpose is that the trial judge was fully informed at the time of the pretrial conference what the evidence would be on this point through not only the – Well, then he could use – use Portsmouth. In other words, I'm saying I would agree that the district court probably could use Portsmouth, but I don't agree that he could use either 52C or a judgment on the plaintiff. You're speaking for one member of the court. Well, it was written as a 52C order, but – The youngest member. It was written as a 52C order, but it seems to me that the nomenclature should not necessarily be controlling, and that you can look at the purpose of the pretrial conference as described in Portsmouth. You can look at Portsmouth, and you can say that what the judge did, regardless of the label he put on it, comes within the discretionary powers of a district court to simplify the issues for trial. Now, the real issue, I think, under Portsmouth is was there notice, was there an opportunity to respond? And clearly, there was both here. This motion was overnight. How many days' notice did he get? He got 10 days' notice. Well, in a normal summary judgment, you get much more. Sure. That's true. But in Portsmouth, the lawyers got no notice. The judge brought it up sua sponte at the pretrial conference, and this was said. With lawyers. That's okay. With lawyers. Understood. But let's look at the prejudice aspect of it. Mr. Derrick has not argued, I don't think in his brief, that if the deemed admissions are upheld, that he has a way to get beyond 52C or Portsmouth or whatever you want to call it. What he says is that you can't look at the deemed admissions because the trial lawyer didn't submit a declaration saying, here are the requests for admissions. By the way, I never got a response. But what the trial lawyer said in the motion under Rule 11 was, here are the deemed admissions. And that's shorthand for saying under the admissions statute that we didn't get a response. And if Mr. Chen had responded to those deemed admissions, he would have said, well, wait a minute, I did respond to these, but that's not in the record. It would have been something that could have been put in the excerpts of record, and it simply never exists. So that's a very technical argument that Mr. Derrick has made to try to get around the deemed admissions, which he has not argued, if he can't get around, he still has a case. So I think you can decide the case on that point. Now, turning to the trial, I think that he was able to put on every scrap of evidence, every theory he wanted to put on. And if you look at ER 125-126, which are the claims that he claimed he would be making a trial under the breach of the covenant of good faith and fair dealing, he specifically raises this accounting fraud issue that Mr. Derrick said was something that was not within the trial. And, in fact, there was evidence at trial on the so-called accounting fraud issue. And what it was, was this. I believe it was Mr. Francis who testified with respect to inventory they put in this warehouse, I believe it was in Hong Kong, that it was originally booked to Mr. Chen, but he was not charged for it. And the reason it was put in the warehouse was Mr. Chen had been so inconsistent and contradictory in placing orders, giving forecasts, canceling orders, changing orders, that they couldn't timely get product from the warehouse in Memphis to him if he actually placed an order. So the product was put in this warehouse in Hong Kong in case Mr. Chen actually  When he didn't place an order, it was rebooked, so it was not a Chen order. That's kind of the sum and substance of what happened with that information. So when you look at the other things that Mr. Chen claimed constituted the 17-200 issues, those were all tried, too. It was the claim about Achieva, the claim about Vannie, the claim about the alleged sales to the other companies, Dragon and New Sea Union, all of which are thoroughly discussed in the testimony. Why didn't the district judge reference the latter two? He references Achieva and he references Vannie, but he doesn't represent the other two. Why not? I don't know why he didn't do that, Your Honor, but the evidence is undisputed from Mr. Myers that those sales got reversed, the product was never sold, and Mr. Chen, therefore, could not possibly have any damages. So I think there may be – while there may be a lacuna in what the judge wrote in the memorandum, I don't think there's any absence of evidence at trial which was really undisputed on this point. Right. And we really have to go back and look at the whole record. Right. And remember, this part of the case is judged under the clearly erroneous standard, which is you have to have a definite and firm conviction that the trial judge made a mistake and that there's no substantial evidence to support the judgment. And certainly there is. Were there any post-trial motions here? Only the tax costs that I'm aware of. Okay. And let me think if there's anything else that came up in Mr. Derrick's that I want to mention.  If there was evidence at trial, it came in through Mr. Francis, that in late 1998, early 1999, Mr. Chen, in fact, repudiated the contract following a meeting with Mr. Francis. And, in fact, he acted pursuant to that repudiation because the evidence is also undisputed that he never ordered another stick of merchandise from 1999 forward. And so even if you say, well, Thomas and Betts didn't get around to giving the formal cancellation of the contract until July 1999, in fact, it had previously been repudiated. And that's a further reason why this evidence of the Vanny and New Sea Union and Dragon is kind of a nonissue, because the issue, the evidence is that the contacts with those companies were in 1999, presumably in the period post-repudiation but pre-formal notice. But, again, those didn't lead to anything, and the evidence is very clear on that point, that there was never a consummated sale that Thomas and Betts made a penny on that Mr. Chen would have some claim for damages, let alone restitution. So I think that that's the case. You don't have to feel compelled to use your time. I do have one question. Was there a – where's the judgment in the record, the page? What page is the judgment in the record? Yes. And specifically as far as the restitution aspect of it is concerned, I didn't see what Judge Cotty actually said. I saw his order, but I didn't see the judgment, what he ordered specifically as to restitution. It may be in our excerpt. Can I go to my briefcase? I couldn't find it in the main excerpt. I'm embarrassed to say it's not in our excerpt either. I don't think it's in either one. So it's not in the record? I can certainly supply it to the Court if you would like it to come from us. Okay. Okay. It's really the appellant's job to get what he needs to. Unless the Court has questions, I think I've covered the things that I need to cover. I guess I would say kind of in summation that this is a case about a plaintiff who didn't perform his contract, had a full and fair opportunity to prove his claims. He didn't prove his claims. It's reviewable under the clearly erroneous standard. There was nothing that he showed at 52C motion that didn't ultimately come into trial. He got ruled against, and that should be the end of it. Thank you. Very briefly. Very briefly. On the judgment point, I apologize. I can't see it there. I could supply it to the Court if it wishes. On the repudiation, I think the record shows that, in fact, it was Mr. Chen only made his remarks to which counsel refers after T&B had threatened to take away the exclusivity. I think they get the sequence the wrong way around. On the deemed admissions point, in the one-page letter opposition that Mr. Chen did file, he did refer to the references to the discovery responses as being, quote, twisted and misinterpreted. So I think there was an issue, a fact, as to whether he had made those admissions on which T&B relies. I'll just make one other sort of general point. I think the other points I was going to make were probably covered in the brief. But it's just a general point that if this is sort of upheld, and it's a messy case, but if it's upheld, the message is there's a shortcut to summary judgment. This is not the way the rules are meant to work. And we're either going to keep on the straight and narrow, or we're going to just take the view, well, you know, this case was heading into trouble anyway, so let's just gloss over this. I don't think one can gloss over it. It was done in a wrong way. A cause of action never went to trial. We don't quite know what would have happened. And he should have his opportunity to put it on, and then they can make their Rule 152C motion if they wish. And I thank the Court for its courtesy. Thank you. The case just argued is submitted for decision. We'll hear the next matter, which is De Prietas v. Kaisler.
judges: Schroeder, Bybee, Wu